UNITED STATES of America, Plaintiff-Appellee,

v.

NEW ORLEANS PUBLIC SERVICE, INC., Defendant-Appellant.

No. 83–3097.

United States Court of Appeals, Fifth Circuit.

June 14, 1984.

Milling, Benson, Woodward, Hillyer, Pierson & Miller, Michael J. Molony, Jr., New Orleans, La., for defendant-appellant.

John Volz, U.S. Atty., New Orleans, La., David L. Rose, Federal Enforcement Section, Richard S. Ugelow, U.S. Dept. of Justice, Civ. Rights Div., Washington, D.C., for plaintiff-appellee.

ON PETITION FOR REHEARING AND
SUGGESTION FOR REHEARING
EN BANC

(OPINION 1/23/84, 5 CIR., 1984,
723 F.2d 422)

Before GARZA, WILLIAMS and HIG-GINBOTHAM, Circuit Judges.

PER CURIAM:

Like a vampire in the night this case refuses to die. As our *NOPSI III* opinion was in the process of being released, the Supreme Court decided *Donovan v. Lone Steer, Inc.,* — U.S. —, 104 S.Ct. 769, 78 L.Ed.2d 567 (1984). In *Lone Steer* the Labor Department served an administrative subpoena *duces tecum* on Lone Steer, Inc., a motel and restaurant. The subpoena required Lone Steer to bring payroll and sales records to a Labor Department office.

Relying on the fourth amendment, the employer refused to comply. The Supreme Court held that the Labor Department did not need a warrant to inspect the documents because they did not attempt to enter the non-public areas of the employer's premises and because departmental procedures permitted Lone Steer to challenge, in court, the reasonableness of the subpoena before compliance was required. The court drew a bright line at attempts of "government inspectors to make non-consensual entries into areas not open to the public." *Lone Steer,* 104 S.Ct. at 773.

In its rehearing petition, the government argues that its proposed search of NOPSI is analogous to the subpoena *duces tecum* in *Lone Steer,* and in light of that decision its proposed search should be approved. Specifically, it contends that in *NOPSI II,* 638 F.2d 899 (5th Cir.1981), we incorrectly applied the higher *Barlow's* standard for warrants, which is appropriate for a physical entry, inspection, and search, but is not applicable to their request, which is in essence solely for documents. The government admits that they sought to enter NOPSI's premises to examine the requested documents, but argues that this does not rise to the level of a surprise entry on an employer's property to discover safety and health hazards as in *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). In the alternative, the government states that it would be satisfied if NOPSI would bring the requested documents to the U.S. Attorney's office. NOPSI maintains that rehearing is inappropriate because *Lone Steer* did not alter the law and because an E.O. 11246 review is more intrusive than an FLSA request.

We agree with NOPSI that *Lone Steer* has not altered the law applicable to this case. In its holding, the Supreme Court specifically points out that it is merely reaffirming *Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946). In deciding *NOPSI II* we did not assume that *Barlow's* had overruled or significantly limited *Oklahoma Press.* In *NOPSI II* the district court thought that *Oklahoma Press* applied because the government was in essence seeking only documents. We implicitly rejected this view when we vacated for a *Barlow's* analysis. We did so because the government had sought a non-consensual entry onto non-public areas to review business records.

The government opines that its request merits *Oklahoma Press* treatment because "where ... the scope of the review is restricted to identified records the actual location of the review is irrelevant." We disagree; the Supreme Court has drawn a bright line at the point of non-consensual entry onto a company's protected premises for good reason. Requiring a company to give an agency access to documents at company headquarters invades corporate privacy and can disrupt the workplace. Such requests may also result in significant administrative and monetary costs. Finally, allowing regulators to examine documents in non-public areas will in some cases enable regulators to discover plain view evidence against a firm. The Justice Department recognized the difference between an on site and off site inspection of documents when it distinguished *NOPSI II* from its attempt to gain access to the requested documents involved in the *Lone Steer* case. It stated that "there is an important difference between an entry onto premises to conduct a broad inspection of documents and a subpoena requiring the production of certain specified documents off premises. A subpoena involves no entry and allows a company itself to search through its files, and find those documents that are specified by the subpoena as relevant." Appellant's reply brief, at 6–7 *reprinted in Donovan v. Lone Steer, Inc.,* —— U.S. ——, 104 S.Ct. 769, 78 L.Ed.2d 567 (1984).

The government's request for documents that led to *NOPSI II* included an on site inspection of NOPSI's employment records. 638 F.2d at 908. For the reasons noted above, such a request is subject to the *Barlow's* standard because it would necessitate entry onto NOPSI's protected premises. Admittedly, one can argue that there is less impetus for recognizing fourth amendment protection since the proposed entry and inspection was not integrally related to the premises as in *Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), *See v. City of Seattle,* 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967), and *Barlow's.* Nevertheless, the government could possibly gain some plain view evidence by entering NOPSI's protected premises to examine business records. Indeed, the OFCCP Manual recommends a physical inspection of a contractor's establishment as an evidence gathering method to be conducted as part of a compliance review.[1]

Our reversal, in *NOPSI III,* 723 F.2d 422 (5th Cir.1984), of the trial court's injunction did not present a close question because the injunction authorized the government to enter NOPSI's premises to examine NOPSI's *facilities* and to inspect its documents.[2] Similarly, the government's discovery request, served on June 14, 1983, unquestionably is governed by, and is in

---

1. The Contract Compliance Manual lists many components to a compliance review including "physical inspection of [a] contractor's establishment." The Manual enumerates seven guidelines for a "physical tour of [the] plant" where an OFCCP official is to make observations, which could redound against the company. The instructions admonish the official to observe:
   (1) Organizational units in which minorities or women are not employed, or only in token numbers;
   (2) Organizational units with concentrations of minorities and women, and their working conditions;
   (3) Whether adequate physical facilities exist for both sexes;
   (4) Whether there are any segregated facilities;
   (5) Whether OFCCP and EEOC posters, contractors' yearly policy statement and other documents are adequately displayed;
   (6) Whether men and women, or minorities and non-minorities, are performing similar work under different job titles, ....
   (7) Whether the contractor has made reasonable accommodations and accessibility for handicapped individuals and covered veterans.

2. The district court, 550 F.Supp. 911, enjoined NOPSI from "[r]efusing to allow the United States ... access, upon reasonable notice, to conduct compliance reviews which may include: (a) entry upon NOPSI property for the examination of NOPSI's facilities, and (b) examination and copying of NOPSI's books, records, accounts, and other relevant material for the purpose of ascertaining NOPSI's compliance with Executive Order 11,246...."

violation of, *Barlow's*.[3] Both the injunction and the discovery request are clearly distinguishable from *Oklahoma Press* and *Lone Steer*. In *Lone Steer* government officials entered a "public lobby ... for the purpose of *serving* an administrative subpoena." 104 S.Ct. at 772 (emphasis added). The Supreme Court has rejected an argument that when "use of [an] administrative subpoena is inextricably intertwined with the entry process," a warrant requirement is triggered. 104 S.Ct. at 772. In this case, however, both the latitude granted under the injunction and the discovery request are not merely incidental or intertwined to entry; they could result in an extensive, non-consensual entry onto NOPSI's protected premises.

The government admits that the law of this case was established in *NOPSI II*. *Lone Steer* merely reaffirms *Oklahoma Press* and does not alter our previous application of the *Barlow's* standard in *NOPSI II*. Consequently, since no intervening Supreme Court ruling has overturned *NOPSI II*, that decision is still the law of this case and is controlling. *See Morrow v. Dillard*, 580 F.2d 1284, 1289–90 (5th Cir.1978).

Our decision does not necessarily drive a wooden stake through the heart of the government's compliance efforts in this case. We remind the parties that in *NOPSI III* we vacated the district court opinion "without prejudice to the agency seeking review in a proper administrative and legal manner." In other words, if the government wishes to inspect NOPSI's facilities or to examine the documents on NOPSI's protected premises it can seek an administrative warrant, assuming there are no statute of limitations problems. Alternatively, the government can also file a Fed. R.Civ.P. Rule 15 motion in the district court and request that NOPSI's records be produced at an off site location. The grant of such a motion, 11 years after this suit was

originally filed, is left to the discretion of the trial court.

For the reasons discussed above the Petition for Rehearing is DENIED.

No member of the panel nor Judge in the regular active service of this Court having requested that this Court be polled on rehearing en banc (Federal Rules of Appellate Procedure and Local Rule 35), the suggestion for Rehearing En Banc is DENIED.

---

**3.** The government sought to: "enter upon, inspect, and observe any and all facilities maintained and/or used by NOPSI, and the job functions of employees within those facilities. This inspection shall include, but not be limited to, the observation at such facilities of employees in every NOPSI job classification and line of progression in the performance of their employment responsibilities."